Gorman, J.
 

 The issues' presented in the
 
 habeas corpus
 
 proceedings filed in Clark county on behalf of Heimie Ashkenazie must be determined under the provisions of the Uniform Criminal Extradition Act (Am. H. B. No. 108, 117 Ohio Laws, —, Sections 109-1 to 109-32, General Code) which became effective August 20, 1937.
 

 Under that enactment it is specifically provided that, subject to its provisions, the provisions of the Constitution of the United States and all acts of Congress enacted in pursuance thereof shall be controlling in matters pertaining to extradition. Section 109-2, General Code.
 

 The principal question involved _ in this case is whether the institution of lunacy proceedings in the Probate Court against one charged with a crime in a sister state will prevent the Governor of Ohio or a court of record of this state from honoring a demand for the surrender of the alleged fugitive.
 

 
 *101
 
 The Governor of Ohio issued his warrant on September 9, 1937, directing that the alleged fugitive, Heimie Ashkenazie, be turned over to the agent of the state of Georgia for the purpose of returning him to that state for trial on a charge of arson. The presumption is that the Governor of Ohio, in issuing his warrant, acted in conformity with the provisions of law.
 
 Maloney
 
 v.
 
 Sheriff of Hamilton County,
 
 98 Ohio St., 463, 121 N. E., 646.
 

 When the extradition papers from Georgia were presented to the Governor of Ohio, he had the right at a hearing to determine whether the person demanded is substantially charged with a crime against the laws of the state of Georgia, from whose justice he is alleged to have fled, by an indictment or an affidavit, and whether the person demanded is a fugitive from the state of Georgia. Section 109-3, General Code.
 
 Roberts
 
 v.
 
 Reilly,
 
 116 U. S., 80, 29 L. Ed., 544, 6 S. Ct., 291;
 
 Munsey
 
 v.
 
 Clough,
 
 196 U. S., 364, 49 L. Ed., 515, 25 S. Ct., 282;
 
 Appleyard
 
 v.
 
 Massachusetts,
 
 203 U. S., 222, 51 L. Ed., 161, 27 S. Ct., 122; 81 A. L. R., 552.
 

 Under former statutes, an alleged fugitive could test the sufficiency of the extradition proceedings either in a hearing before the Court of Common Pleas upon the warrant of the Governor or by an application for
 
 habeas corpus.
 
 Under the present act, it is provided that no person arrested upon a warrant of the Governor shall be delivered to the agent of the demanding state unless he shall first be taken before a judge of a court of record in this state and, “if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be • allowed him within which to apply for a writ of
 
 habeas corpus.”
 
 Section 109-10, General Code.
 

 Heimie Ashkenazie, an alleged fugitive, had a right,
 
 *102
 
 therefore, to test the sufficiency of the extradition proceedings in
 
 habeas corpus
 
 before the Court of Common Pleas of Clark county. The statute, however, expressly provides that “the guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the Governor or
 
 in any proceeding after demand .for extradition”
 
 has been presented. (Italics ours.) Section 109-20, General Code. The Court of Common Pleas' in
 
 habeas corpus
 
 has no greater power to determine the regularity of the extradition proceedings than the Governor. The same issues and questions may be presented to both.
 
 Wilson
 
 v.
 
 Nolze,
 
 34 Ohio St., 520.
 

 Absence from the scene of the crime or an alibi cannot be shown unless it is probative of the fact that the accused is not a fugitive.
 
 Benson
 
 v.
 
 Henkel,
 
 198 U. S., 1, 49 L. Ed., 919, 25 S. Ct., 569. Neither can the claim that the offense is outlawed by the statute of limitations be determined.
 
 United States
 
 v.
 
 Cook,
 
 84 U. S. (17 Wall.), 168, 21 L. Ed., 538; 77 A. L. R., 902. These are matters of defense, and must be determined by the courts of the demanding state.
 
 Kentucky
 
 v.
 
 Dennison, Governor,
 
 65 U. S. (24 How.), 66, 16 L. Ed., 717;
 
 Ex parte Reggel,
 
 114 U. S., 642, 29 L. Ed., 250, 5 S. Ct., 1148;
 
 In re Moyer,
 
 12 Idaho, 250, 85 P., 897, 12 L. R. A. (N. S.), 227.
 

 In a widely discussed case it was held that whether the alleged fugitive was insane at the time of the commission of the offense could not be determined by the laws of the state where he sought asylum, but must be decided by the laws and by the courts of the demanding state where the offense occurred.
 
 Drew, Sheriff,
 
 v.
 
 Thaw,
 
 235 U. S., 432, 59 L. Ed., 302, 35 S. Ct., 137.
 

 No claim is made in this instance that Ashkenazie was insane at the time of the commission of the offense. It is contended that he is now insane, and that until the Probate Court determines such question the
 
 *103
 
 Governor of Ohio wás without authority to issue a warrant.
 

 The warrant of the Governor was issued after the lunacy proceedings had been commenced, but not until after the extradition papers had been presented by the agent of Georgia to the Governor of Ohio.
 

 Under the provisions of Section 10501-53, General Code, “except as hereinafter provided, the Probate Court shall have jurisdiction * * * to make inquests respecting lunatics, insane persons, idiots and deaf and dumb persons, subject by law to guardianship.”
 

 Accompanying the application for a hearing for commitment “information shall also be furnished to the probate judge as to whether or not it will be proper to bring such insane person into court, and as to whether or not * * * his' being at large is dangerous to the community.” Section 1953, General Code.
 

 In order to commit to an institution, the probate judge must be satisfied that the person is insane, and accompanying the order of commitment must be a certificate of his condition signed by two medical witnesses. Sections 1956,1957 and 1958, General Code.
 

 If examining physicians report that the person named in the lunacy warrant should not be brought into court, a hearing may be conducted in his absence. Section 1955, General Code. A person may even voluntarily apply and be committed to a state institution for the insane. Sections 1972 and 1973, General Code.
 

 A review of these provisions shows that the proceeding is purely an
 
 ex parte
 
 one. The prosecuting attorney is not present to object to the proceedings. They are purely civil in their nature and not of an adversary character.
 

 The probate judge has a wide latitude in determining whether one is sane or insane. On the other hand, where a plea is made in this state, under the provisions of Section 13441-1, General Code, that a defendant
 
 *104
 
 under indictment is insane at the time of trial, there are well, established tests to determine his mental capacity.
 

 It is generally recognized that upon such a trial inquiry should be made whether the person indicted has sufficient mental capacity to recall the events of his life so that he can furnish to his counsel facts which ought to be stated and presented to a jury at his trial for the crime charged.
 
 United States
 
 v.
 
 Chisholm,
 
 149 F., 284;
 
 State
 
 v.
 
 Arnold,
 
 12 Iowa, 479;
 
 State
 
 v.
 
 Detar,
 
 125 Kan., 218, 263 P., 1071;
 
 State
 
 v.
 
 Seminary,
 
 165 La., 67, 115 So., 370;
 
 Freeman
 
 v.
 
 People,
 
 4 Denio (N. Y.), 9;
 
 Commonwealth
 
 v.
 
 Scovern,
 
 292 Pa., 26, 140 A., 611;
 
 Jordan
 
 v.
 
 State,
 
 124 Tenn., 81, 135 S. W., 327, 34 L. R. A. (N. S.), 1115; 3 A. L. R., 94.
 

 It is evident that one could be found insane in the Probate Court, and yet be declared sane by a court or jury in proceedings under Section 13441-1, General Code. As was well said by Judge Obey in
 
 Wheeler
 
 v.
 
 State,
 
 34 Ohio St., 394, 397, 32 Am. Rep., 372:
 
 “A
 
 person who is a fit subject for confinement in an insane asylum does not necessarily have immunity from punishment for crime.”
 

 Under former statutes this court held that when a person was charged with crime his sanity must be determined under the provisions of the criminal code, and that such statutes were peremptory and exclusive.
 
 State
 
 v.
 
 Roselot,
 
 69 Ohio St., 91, 68 N. E., 825;
 
 State
 
 v.
 
 Hollenbacher,
 
 101 Ohio St., 478, 129 N. E., 702.
 

 While the content of some statutes has been changed, it is still the law of this state that the mental capacity of one under indictment must be determined under the provisions of Section 13441-1, General Code, and not by the probate judge.
 

 Consequently, if Ashtenazie were indicted in this state, his mental capacity would be determined in the Court of Common Pleas and not the Probate Court.
 
 *105
 
 Does the fact that he is charged in Georgia rather than' in Ohio give the Probate Court any greater jurisdiction?
 

 Where, after an adjudication of insanity and commitment to an asylum in a civil proceeding, a person so adjudged commits a criminal act, a court having jurisdiction of the offense may take him into custody and try him for such offense in the absence of a statutory provision to the contrary.
 
 Myers
 
 v.
 
 Halligan,
 
 244 F., 420;
 
 Whitney
 
 v.
 
 Zerbst, Warden,
 
 62 F. (2d), 970;
 
 People
 
 v.
 
 Gilberg,
 
 197 Cal., 306, 240 P., 1000;
 
 State, ex rel. Deeb,
 
 v.
 
 Fabisinski,
 
 111 Fla., 454, 152 So., 207;
 
 Quattlebaum
 
 v.
 
 State,
 
 119 Ga., 433, 46 S. E., 677;
 
 In re McWilliams,
 
 254 Mo., 512, 164 S. W., 221.
 

 Upon a review of these cases, it is evident that a determination of the sanity of Ashkenazie by the Probate Court would not in any manner prevent his extradition for a crime. Not only would such action by the Probate Court be ineffective, but neither the Governor nor court hearing an application for a- writ of
 
 habeas corpus
 
 is authorized to hear evidence of present insanity of one alleged to be a fugitive.
 

 In a case involving extradition under a treaty with Italy, the Supreme Court of the United States, in
 
 Charlton
 
 v.
 
 Kelly, Sheriff,
 
 229 U. S., 447, 57 L. Ed., 1274, 33 S. Ct., 945, held that the question of present insanity must be determined under the law of the demanding state. The statement made by Mr. Justice Lurton at page 462 seems decisive: “We therefore conclude that the examining magistrate did not exceed his authority in excluding evidence of insanity. If the evidence was only for the purpose of showing present insanity by reason of which the accused was not capable of defending the charge of crime, it is an objection which should be taken before or at the time of his trial for the crime,
 
 and heard by the court having jurisdiction of the crime.”
 
 (Italics ours.)
 

 
 *106
 
 Therefore, the courts of Ohio do not possess the power to inquire into the present sanity of Ashkenazie, hut that is to be determined under the laws of the state of Georgia where opportunity to present that question is provided by a special plea and tried by a special jury. Title 27, Sections 1502, 1503 and 1504, Code of Georgia (1936); Cobb 840, Act 1857, page 126.
 

 The filing of the lunacy warrant in the Probate Court had no effect on the jurisdiction of either the Governor or the Court of Common Pleas of Clark county.
 

 An examination of the answer discloses that Judge Marion B. Owen has expressed a willingness to proceed if he has jurisdiction, while Judge Golden C. Davis has stated that he did not desire to “interfere or interpose himself” in the proceeding. Therefore, if a writ is to be issued, it should be directed against Judge Marion B. Owen. Judge Owen did not make a final order. He stayed proceedings in the
 
 habeas corpus
 
 action only so long as the lunacy proceedings were pending before the Probate Court and “until further order of court.”
 

 This court having determined that the lunacy proceedings should be disregarded, it is now the duty of Judge Owen to proceed, hear and render final judgment in the
 
 habeas corpus
 
 action.
 

 The writ of
 
 procedendo
 
 is merely an order from a court of superior jurisdiction to one of inferior jurisdiction to proceed to judgment. It does not in any case attempt to control the inferior court as to what that judgment should be. However, such inquiry is limited to a determination of those questions proper to be presented in extradition proceedings and set forth in Section 109-3, General Code.
 

 For the reasons stated, the demurrers to the answers will be sustained and the writ of
 
 procedendo
 
 will be issued directing Judge Marion B. Owen to proceed
 
 *107
 
 to final hearing in the
 
 habeas corpus
 
 proceedings instituted on behalf of Heimie Ashkenazie.
 

 Writ allowed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams and Myers, JJ., concur.