OPINION OF THE COURT
Solomon H. Katz, J.
The petitioner herein, Otto F. Fusco, Esq., moves by way of writ of habeas corpus, challenging the sufficiency of a warrant of extradition concerning the relator, Tammie Wells, also known as Naomi Booker.
The relator, Tammie Wells, is presently detained at the New York Correctional Facility for Women located at ISIS Hazen Street, East Elmhurst, New York, pursuant to a warrant issued by the Honorable Mario Cuomo, Governor of the State of New York, on a requisition from the Governor of the State of North Carolina.
Ms. Tammie Wells, the subject of a grand larceny case (docket No. 3X03267/83) pending in Bronx County, is alleged to be a fugitive from justice in North Carolina. More specifically, Ms. Wells is charged with having escaped from the North Carolina Correctional Institution on February 2, 1972, where she had allegedly been serving a 7- to 10-year *20 sentence on a manslaughter conviction dating back to April of 1968.
On October 27, 1983, the Honorable Barry Salman of this court directed that a psychiatric examination of Ms. Wells be conducted pursuant to CPL article 730. Examinations were, in fact, conducted on December 15, 1983, January 5,1984 and January 19,1984! Said psychiatric examinations reveal that Tammie Wells lacks the capacity to understand the proceedings against her or to assist in her own defense, owing to the presence of a severe mental disturbance which affects her emotions, mood and cognition to a severe degree.
The threshold issue before this court is whether the extradition proceedings, wherein the State of North Carolina seeks the return of Tammie Wells on a fugitive warrant, should be stayed until Ms. Wells’ competency has been restored. This issue appears to be a question of first impression in this judicial department.
CPL 570.24, pertaining to fugitive warrants, requires that the accused be brought before a judicial officer prior to delivery to the demanding authority in order to be afforded his or her rights, which include the assistance of counsel and habeas corpus, to challenge extradition.
In a habeas corpus proceeding to determine the sufficiency of a warrant of extradition, the scope of inquiry by the court in the asylum State is restricted to three basic areas: whether the prisoner is the person named in the warrant; whether he or she was in the demanding State at the time of the alleged crime; and, whether he or she is substantially charged with a crime under the laws of the demanding jurisdiction. (People ex rel. Mallin v Wilson, 79 Misc 2d 575; People v Miller, 74 Misc 2d 806; People ex rel. Shurburt v Noble, 4 AD2d 649.)
CPL article 730 deals with the issue of fitness to proceed. Technically, however, CPL article 730 does not apply to extradition proceedings because CPL 730.30 (subd 1) refers to proceedings upon an accusatory instrument, the definition of which (CPL 1.20, subd 1) does not include extradition warrants authorized by CPL 570.18.
*21 Hence, the People contend that Ms. Wells’ incompetency does not provide a ground for staying the extradition proceeding. The People further urge that, in view of the limited scope of inquiry at an extradition hearing, the right to effective counsel is a less compelling concern than it would be at other kinds of legal proceedings.
In what is apparently the only reported New York case which considered the issue at bar, the Appellate Division, Second Department, in Matter of Welkes v Brennan (79 AD2d 644), concluded that a person’s right to counsel should not be rendered a meaningless formality because of an inability to understand the nature of the extradition proceeding or to assist his counsel in either waiving or challenging extradition on the narrow grounds available in this summary proceeding.
The Supreme Court of Alaska in Kostic v Smedley (522 P2d 535 [Alaska]), considered the question of whether it is a violation of due process to subject a mental incompetent to an extradition proceeding. The court, in a well-reasoned opinion, concluded (pp 537-538) that such a person “has the express right to test the legality of the arrest in a court * * * by way of habeas corpus, and the further right ‘to demand and procure legal counsel.’ The only point in affording the arrested person the right to counsel would be so that counsel could represent him in testing the legality of his arrest. But such representation would be a farce if the arrested person were so mentally incompetent that he could not understand the nature of the habeas corpus proceedings or assist counsel in testing the legality of the arrest. The statutory right to have the assistance of counsel would, in such a case, become a nullity. We shall not apply the law in such a manner that an express and unambiguous statutory right has no meaning.
“Nor shall we apply the law in such a manner as to possibly deprive appellant of his right to due process of law. Habeas corpus has traditionally been considered as a civil proceeding. But where a possible deprivation of one’s liberty is involved, as it is in an extradition matter, habeas corpus proceedings in relation to extradition will be considered criminal in nature * * * In order to afford due process of law, it must appear that the accused has a present *22 ability to consult with his attorney with a reasonable degree of rational understanding, and that he has a rational as well as a factual understanding of the proceedings against him
“We apply this * * * standard in habeas corpus — extradition proceedings.”
In Luker v Koch (176 Col 75), the Supreme Court of Colorado considered the question of whether a defendant’s competency should be considered by a court in the asylum State, and concluded that an accused’s guilt or innocence and any issue as to his sanity as it relates to his guilt or innocence or ability to stand trial were not issues in a habeas corpus proceeding challenging extradition.
Luker v Koch (supra) is distinguishable from the case at bar. In Luker, the petitioner was an accused whose extradition was sought so that he could stand trial upon pending criminal charges. In the instant case, however, the relator is a person whose return is sought primarily so that she may be compelled to complete serving a term or incarceration to which she has allegedly already been sentenced. Thus, her incarceration upon return to North Carolina could be accomplished without any of the safeguards that would enure to a person who has merely been charged with a crime; most particularly, the right to raise the issue of competency before a court in the demanding State.
Further, in addition to the term of incarceration that has already been imposed for manslaughter, there is also a pending charge for the crime of escape.
This court also considered that the Supreme Court of Colorado stated in Luker v Koch (supra, p 81) that the “only conceivable situation in which a court in the asylum state might be required to consider sanity would be one in which the petitioner is so incompetent as to be totally unable to assist his counsel in a habeas corpus proceeding in connection with a pending extradition.”
Clearly, this is the situation in the instant case. The examination reports of the qualified psychiatrists conclude that the relator, Ms. Tammie Wells, is unfit to proceed.
The Court of Appeals of Kentucky considered the question of whether the mental competence of a fugitive is *23 relevant in an extradition proceeding, and concluded that it is not. (Kellems v Buchignani, 518 SW2d 788 [Ky].) The majority therein, in a 4 to 2 decision, failed to state any reasoning behind its conclusion. However, Justice Pal-more, in a well-reasoned dissenting opinion stated (p 789) that "surely it is elementary that constitutional due process prohibits the bundling up and shipment of a human being from one state to another without an opportunity to be heard, no matter how limited in scope the available defenses against it may be * * * One who does not have sufficient mental capacity to understand and participate in a proceeding being held for the purpose of depriving him of his liberty is no different from an unconscious person, and such incapacity is no different from physical absence. If he has no mind, in effect he is absent, and if it makes no difference, as the majority opinion holds, then it really makes no difference whether he has any hearing at all; and if that makes no difference it cannot logically or sensibly be said that he has any right to a hearing in the first place. This is where the majority opinion ends in a head-on collision with both the statute and the constitutional guaranties of due process.”
This court wholeheartedly concurs and adopts the aforesaid minority opinion in Kellems v Buchignani as its own. Moreover, that minority opinion appears to be in accord with the weight of prevailing authority.
In view of the circumstances attendant herein, it is the judgment of this court that the relator, Tammie Wells, also known as Naomi Booker, is an incapacitated person, as that term is defined in CPL 730.10 (subd 1).
Accordingly, I direct that the relator, Tammie Wells, be committed to the custody of the New York State Commissioner of Mental Hygiene for care and treatment in an appropriate institution for a period of one year from the date of this order. I further direct the Commissioner to provide for periodic re-examinations of the relator, at intervals not to exceed 90 days. Such re-examinations shall be conducted by qualified psychiatric examiners, as that term is defined in CPL 730.10 (subd 7). In the event that any such re-examinations shall reveal that the relator might be fit to proceed, the Commissioner shall report that fact to this court.