Clyde Edwin PRUETT,
Petitioner-Appellant,

v.

Bernard BARRY, Sheriff of El Paso
County, Colorado,
Respondent-Appellee.

No. 84SA75.

Supreme Court of Colorado,
En Banc.

March 11, 1985.

Rehearing Denied April 1, 1985.

J. Gregory Walta, Colorado Springs, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia A. Wallace, Eric Perryman, Asst. Attys. Gen., Denver, for respondent-appellee.

LOHR, Justice.

This is an appeal from an order of the El Paso County District Court discharging a writ of habeas corpus, thus permitting the petitioner, Clyde Pruett, Jr., to be extradited to Texas for trial on two charges of capital murder. We hold that the trial court applied an incorrect standard in determining the petitioner's mental competence for the purpose of the habeas corpus proceeding. Therefore, we reverse the district court's order and remand the case for further proceedings.

## I.

In October of 1983, the Colorado Springs Police Department received information from authorities in Texas that two suspects were wanted for questioning as part of an investigation of a double murder in Dallas. Based upon the information obtained from Dallas officials and their own supplemental investigation, Colorado Springs officers identified the petitioner and Harry Temen as the suspects in the case and arrested each of them without a warrant. Thereafter, a Texas judge issued arrest warrants for the suspects and each was charged with two counts of capital murder in Texas.

A fugitive complaint was filed against the petitioner in El Paso County District Court based on the crimes allegedly committed in Texas.[1] Pruett moved to dismiss the complaint on the basis that his arrest was illegal because the requirements of sections 16–19–114 and –115, 8 C.R.S. (1978), were not satisfied. The trial court held a hearing and denied the motion.

The petitioner then obtained issuance of a writ of habeas corpus to test the sufficiency of the extradition proceedings. In that petition he included the allegation that he was "not competent to understand the proceedings against him." After a competency hearing, the trial court determined that the petitioner was competent to proceed. The court then considered the merits of the habeas corpus challenges, ruled that the petitioner's objections to extradition were without merit, and discharged the writ. This appeal followed.

On appeal the petitioner renews his challenge to the legality of his arrest and contends that the court erred in finding him competent to proceed for purposes of the habeas corpus hearing. He also asserts that a psychiatric report was improperly received in evidence at the competency hearing. We first consider the arrest issue and then address the questions concerning mental competence and the court's evidentiary ruling.

## II.

Sections 16–19–114 and –115, 8 C.R.S. (1978), specify the criteria and procedures for obtaining an arrest warrant for a fugitive and for arresting such a person without a warrant. The petitioner argues that the statutory criteria were not met because no charges had been filed in Texas or Colorado and no arrest warrant had been issued in either state at the time he was apprehended. This forms the basis for his contention that his arrest was unlawful and that, as a result, the fugitive complaint should be dismissed.

---

1. A fugitive complaint also was filed against the other suspect, Harry Temen. Temen requested habeas corpus relief in El Paso County District Court. The district court denied relief and discharged the writ of habeas corpus. We affirmed. *Temen v. Barry*, 695 P.2d 745 (Colo. 1984).

We need not consider the petitioner's arguments in detail, however, because a governor's warrant was issued subsequent to the motion hearing in the trial court. The validity of that warrant and of the documents supporting it are not contested here. It is well settled that issuance of a governor's warrant renders moot all questions concerning the validity of the initial arrest. *Reese v. Warden,* 193 Colo. 7, 561 P.2d 339 (1977); *Dilworth v. Leach,* 183 Colo. 206, 515 P.2d 1130 (1973); *Luker v. Koch,* 176 Colo. 75, 489 P.2d 191 (1971); *McClearn v. Jones,* 162 Colo. 354, 426 P.2d 192 (1967).

### III.

The petitioner has also challenged certain aspects of his habeas corpus hearing, all of which concern his competence to participate in the proceeding. We note preliminarily that the scope of inquiry in a habeas corpus proceeding in which extradition is challenged is narrowly limited. The court may consider only issues concerning: 1) the technical sufficiency of the extradition documents, 2) the identification of the accused, 3) whether the accused has been substantially charged with a crime, and 4) whether the accused is a fugitive from justice. *Rodriquez v. Sandoval,* 680 P.2d 1278 (Colo.1984); *Denbow v. Williams,* 672 P.2d 1011 (Colo.1983); *Lomax v. Cronin,* 194 Colo. 523, 575 P.2d 1285 (1978). Courts in the asylum state may not inquire into issues bearing on the petitioner's guilt or innocence, *Dressel v. Bianco,* 168 Colo. 517, 452 P.2d 756 (1969), and any questions concerning the petitioner's sanity as it affects his ability to stand trial are properly addressed to courts in the demanding state. *Luker v. Koch,* 176 Colo. 75, 489 P.2d 191 (1971); *see Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) (international extradition proceeding).

The petitioner took the position at the habeas corpus hearing that he was not mentally competent to participate in the proceedings to challenge his extradition. The trial court found that the petitioner was competent to proceed, concluding that he had not provided evidence that he was totally unable to assist his counsel. On appeal, Pruett argues that the trial court applied an incorrect standard to assess mental competence and that the testimony of the psychiatrist called by the petitioner, when evaluated under the proper standard, established that he was incompetent to proceed. The petitioner also contends that the trial court erred in admitting a written psychiatric report prepared by another expert and offered by the People. We agree that the trial court employed an incorrect standard to determine Pruett's competence to proceed.

### A.

The trial court read *Luker v. Koch,* 176 Colo. 75, 489 P.2d 191 (1971), to establish that a petitioner is incompetent to proceed with a habeas corpus challenge to extradition only if that person is totally unable to assist his counsel. Pruett argues that this standard is both incorrect and unworkable and urges that we adopt the standard articulated by the Alaska Supreme Court in *Kostic v. Smedley,* 522 P.2d 535 (Alaska 1974). We hold that, properly understood, *Luker v. Koch* recognizes that evaluation of competence may be necessary in a habeas corpus proceeding to challenge extradition and does not adopt a standard at odds with the one developed by the Alaska court in *Kostic v. Smedley.*

In *Luker v. Koch,* the petitioner contended that the trial court erred in declining to stay proceedings for his extradition until a court-ordered evaluation of his mental competence could be conducted. The issue was presented when the petitioner's counsel "represented to the trial court that Luker may be mentally incompetent." *Id.,* 176 Colo. at 77, 489 P.2d at 192. In rejecting the contention that a competency examination should have been ordered, we noted the narrow scope of inquiry in a habeas corpus proceeding incident to extradition. With respect to the issues of whether the accused has been sufficiently identified, charged with a crime, and established to be a fugitive from justice, we stated that

"[i]nquiry into the competency of the petitioner is not usually probative of [those three issues]." 176 Colo. at 80, 489 P.2d at 193. We concluded, "[t]he only conceivable situation in which a court in the asylum state might be required to consider sanity would be one in which the petitioner is so incompetent as to be totally unable to assist his counsel in a habeas corpus proceeding in connection with a pending extradition." 176 Colo. at 81, 489 P.2d at 193. In *Luker* the petitioner offered no evidence to support or explain his suggestion of incompetence. On the basis of this record, we held that the trial court did not err in denying the petitioner's motion to stay extradition pending commitment of the petitioner for a mental examination.

In *Luker* we simply recognized that the issues in a habeas corpus proceeding in connection with extradition are very limited and usually not complex. A petitioner need possess only such a degree of competence as will enable him to understand those issues and to assist counsel in obtaining a just resolution of them. Absent more than a suggestion of such a degree of incompetence by statement of counsel, the trial court need not stay extradition to await a competency examination. Our statements in *Luker* cannot properly be isolated from the factual and procedural context of that case.

The petitioner urges that we adopt the mental competence standard set forth in *Kostic v. Smedley*, 522 P.2d 535 (Alaska 1974). Kostic sought habeas corpus relief in Alaska courts to avoid extradition to Florida. He raised the question of his competence to proceed at the habeas corpus hearing and was denied relief. The record established that Kostic had been examined by a psychiatrist in connection with a separate criminal action then pending in Alaska. That examination was ordered by the court because of Kostic's previous history of psychiatric illness and his attempt to commit

suicide while in jail. The psychiatrist concluded that Kostic was mentally ill and recommended hospitalization and treatment. Civil commitment proceedings were then initiated. Kostic was found mentally ill and was committed for treatment. He remained hospitalized at the time of the extradition proceedings. 522 P.2d at 536.

In *Kostic*, the Alaska Supreme Court agreed with our statement in *Luker* that a situation might exist in which a petitioner is so incompetent as to be unable to assist counsel in a habeas corpus proceeding in connection with a pending extradition. The court found that such a situation existed with Kostic. *Kostic v. Smedley*, 522 P.2d at 537. *See Luker v. Koch*, 176 Colo. at 81, 489 P.2d at 193–94. The *Kostic* court then stated:

> In the context of a criminal trial, the conviction of an accused person who is not mentally competent to stand trial violates due process. In order to afford due process of law, it must appear that the accused has [sufficient] [2] present ability to consult with his attorney with a reasonable degree of rational understanding, and that he has a rational as well as a factual understanding of the proceedings against him. [Citing, by footnote, *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).]
>
> We apply this same standard in habeas corpus-extradition proceedings.

522 P.2d at 537–38 (footnotes omitted). In *Dusky*, the United States Supreme Court adopted the above-quoted standard for use in determining whether a defendant is competent to stand trial. 362 U.S. at 402, 80 S.Ct. at 788–89. The American Bar Association, in its Standards for Criminal Justice, has adopted very similar standards, patterned after *Dusky*, for use in determining whether a defendant is competent to plead guilty or nolo contendere or is competent at

---

**2.** Although the court in *Kostic v. Smedley* referred to "a present ability" to consult with counsel, *Dusky v. United States,* from which the *Kostic* test was derived, speaks of "sufficient present ability," 362 U.S. at 402, 80 S.Ct. at 789,

as do the analogous American Bar Association criminal justice standards. *See* ABA Standards for Criminal Justice 7–5.1(a)(ii), 7–5.2(a)(i), 7–5.4(a) (2d Ed.1980).

the time of sentencing, or appeal in noncapital cases. ABA Standards for Criminal Justice 7–5.1(a)(ii), 7–5.2(a)(i), 7–5.4(a) (2d Ed.1980) (formally adopted by ABA House of Delegates August 7, 1984).

■ As the Alaska Supreme Court did in *Kostic*, we now adopt the *Dusky* standard for use in determining whether a petitioner is sufficiently competent that the district court may proceed to resolve the questions presented by a writ of habeas corpus issued in connection with a pending extradition request. We stated in *Luker* that an inquiry into the competence of the petitioner is "not *usually* probative" as to whether the accused has been sufficiently identified, charged with a crime, and established to be a fugitive from justice. 176 Colo. at 80, 489 P.2d at 193 (emphasis added). It is not hard to imagine situations, however, in which a petitioner's rational and factual understanding of the proceedings or his ability to assist counsel with a reasonable degree of rational understanding would be important in resolving these material issues. Key factual questions concerning the identity of the petitioner as the accused and the presence of the petitioner in the demanding state at the time the crime was committed are not always easily resolved. Where the petitioner's incompetence is such that he is unable to consult and communicate with counsel and to understand the nature of the proceeding, his counsel's ability to raise and present such key factually-based defenses to extradition as presence and identity has been said to be "completely foreclosed." *State ex rel. Jones v. Warmuth*, 272 S.E.2d 446, 451 (W.Va. 1980). *See also Kostic v. Smedley*, 522 P.2d at 538.

The standard articulated in *Dusky* and *Kostic*, which we here adopt, is simply an appropriate elaboration of the test and reasoning implicit in the relevant statements from *Luker*. Other courts have utilized standards similar to the one that we now approve, also citing *Dusky, Kostic, Luker*, or some of those cases, as supporting authority. *State v. Tyler*, 398 So.2d 1108 (La.1981); *In the Matter of Welkes v. Brennan*, 79 A.D.2d 644, 433 N.Y.S.2d 817 (1980) (memorandum by the court); *People ex rel. Fusco on Behalf of Wells v. Sera*, 123 Misc.2d 19, 472 N.Y.S.2d 564 (1984); *State ex rel. Jones v. Warmuth*, 272 S.E.2d at 449–51. We are aware that the Kentucky Supreme Court has held that the mental competence of a fugitive in extradition proceedings is irrelevant even as related to the narrow issues involved in such proceedings. *Kellems v. Buchignani*, 518 S.W.2d 788 (Ky.1974).[3] For the reasons suggested in *Luker* and detailed in *Kostic*, we decline to follow the Kentucky rule.

### B.

Before considering the merits of the petitioner's habeas corpus objections to extradition, the trial court received evidence concerning Pruett's mental condition. The petitioner called Dr. Richard L. Conde, a psychiatrist and psychiatric consultant to the El Paso County jail authorities. Conde had examined Pruett on December 9, 1983, and again on the evening before the January 6, 1984, habeas corpus hearing. The doctor related that Pruett had attempted to hang himself in his cell on November 28 and had episodes in which he pounded his head on the floor of his cell. Pruett experienced almost continuous hallucinations during which he believed imaginary assailants

---

**3.** Several courts have held or noted that the competence of the accused is irrelevant in extradition proceedings, without analyzing the question of competence as it relates to the narrow issues involved in an extradition proceeding, and citing *Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) as supporting authority. *E.g., State ex rel. Buster v. Purdy*, 219 So.2d 43 (Fla.Dist.Ct.App.1969); *State ex rel. Davey v. Owen*, 133 Ohio St. 96, 12 N.E.2d 144 (1937); *Ex Parte Cohen*, 23 N.J.Super. 209, 92

A.2d 837 (1952). *Charlton v. Kelly* held that the accused's present competence as it relates to his ability to *stand trial* is irrelevant in an international extradition proceeding. 229 U.S. at 462, 33 S.Ct. at 950. *Charlton* did not address the issue of an accused's competence as it affects his ability to understand and assist counsel in handling the limited issues involved in the extradition proceeding itself—the separate issue involved in this case.

were conspiring to kill him. He also related a history of alcoholism. As a result of Conde's recommendations based on his first examination, Pruett was transferred to the Colorado State Hospital for psychiatric care and was held there until returned to the El Paso County jail for the purpose of the habeas corpus hearing.

Asked for his opinion of Pruett's competence to proceed, Conde said,

[I]t's my opinion that a man who's almost constantly hallucinating, has a brain disease which prevents him from really understanding the nature of his circumstances and cooperating with counsel.

However, when asked whether Pruett would be totally unable to cooperate with his counsel, Conde said, "I think that that condition would only be manifest by a deep coma, and he clearly is not in a deep coma." At the conclusion of his testimony, and after the court explained the limited issues presented on habeas corpus, Conde said he did not know whether Pruett would be totally unable to assist counsel in such a proceeding.

 We hold in this opinion that "total inability to assist counsel" is not the correct test. The trial court specifically applied that erroneous standard in ruling on Pruett's competence to proceed. Therefore, the court's ruling must be reversed and the case remanded for determination of competence to proceed using the standard that we have approved in this opinion.

### C.

The petitioner also asserts as error the trial court's receipt in evidence of a written report by Dr. John Fleming, a psychiatrist who had examined Pruett before any hearings began, based on the petitioner's motion, and found him competent to proceed. The court's order pursuant to which the examination was conducted provided that the results of the evaluation were to be submitted to the court. Fleming did not appear at the competency hearing, and the petitioner objected to the doctor's report as hearsay. The record is somewhat ambiguous with respect to whether the report was made part of the record of this proceeding before the objection was interposed. The record does not contain the report, and the contents of that document may be relevant to its admissibility. For this reason, and because this issue may not arise during further proceedings, we do not rule on the correctness of the trial court's order receiving the report in evidence.

We recognize the tension in the law concerning the applicability of the various rules of evidence, codified and common law, during this type of proceeding. On the one hand, the Colorado Rules of Evidence specifically do not apply in "[p]roceedings for extradition." CRE 1101(d)(3). On the other, those rules do apply in "special statutory proceedings," such as habeas corpus, to the extent that they are not in conflict with statutory requirements for such proceedings. *See* CRE 1101(e); Art. 45, Title 13, 6 C.R.S. (1973 & 1984 Supp.); FRE 1101(e) (and accompanying advisory committee note). Even if the hearings in the trial court are characterized as "proceedings for extradition," and, therefore, the Colorado Rules of Evidence do not apply, the issue remains as to what common law rules of evidence, if any, must apply in order to afford the petitioner a hearing that accords with due process. In *Denbow v. Williams*, 672 P.2d 1011 (Colo.1983), we noted that "[b]ecause identification is a question of paramount significance in an extradition case, the accused must be granted broad cross-examination of witnesses who identify him or her as the person whose extradition is sought." 672 P.2d at 1014. We have also held, however, that extradition affidavits that include hearsay statements of an investigating police officer from the demanding state are not deficient for that reason. *Goeschel v. Cronin*, 196 Colo. 435, 586 P.2d 664 (1978).

The need to allow written statements from the demanding state into evidence at extradition proceedings, without strict observance of the asylum state's evidentiary rules concerning hearsay and authentication, is one of the principal reasons that extradition proceedings were excluded

from the applicability of the Federal Rules of Evidence. *See* FRE 1101(d)(3) (and accompanying advisory committee note) and 18 U.S.C. § 3190 (1982). *See also* 1 *Wigmore on Evidence*, § 4(6) (Tillers rev.1983). Here, however, the hearsay report was not from the demanding state and did not relate to the extradition request itself. Rather, the report was the product of a local psychiatrist, who presumably was available to testify and be cross-examined, and the report concerned Pruett's present mental competence to proceed with the habeas corpus hearing. All of these factors, as well as our prior case law and other relevant authorities, should be considered by the district court when determining whether to receive the report without the testimony of the psychiatrist if again offered and objected to in further proceedings on remand.

The order of the district court discharging the writ of habeas corpus is reversed and the case is remanded for further proceedings consistent with this opinion.

JUSTICE ROVIRA concurs in part and dissents in part.

ROVIRA, Justice, concurring in part and dissenting in part:

I disagree with the majority's interpretation of *Luker v. Koch*, 176 Colo. 75, 489 P.2d 191 (1971), and with its adoption of a new standard for determining an individual's mental competence in an extradition proceeding, and therefore respectfully dissent to sections III A and B of the majority opinion.

As pointed out by the majority, the issues reviewable in habeas corpus proceedings in which extradition is challenged are very narrow. The asylum state is not responsible for determining the guilt or innocence of the alleged fugitive in extradition proceedings. The issue of mental competence is one which may be properly raised before the court in the demanding state; however, review of this issue is not constitutionally required in the asylum state. *See Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) (magistrate did not err in excluding evidence of insani-

ty in extradition proceeding); *Kellems v. Buchignani*, 518 S.W.2d 788 (Ky.1974) (mental competence of fugitive not relevant in extradition proceedings).

Even though the constitution does not require review of the issue of mental competence in extradition proceedings, this court has stated in dicta that sanity might be relevant where the individual is so incompetent as to be totally unable to assist his counsel. *Luker*, 176 Colo. at 81, 489 P.2d at 193. I agree with the standard stated in *Luker*. This is the standard applied by the trial court in the present case; thus, the trial court did not err.

I disagree with the majority's statement that *Luker* "properly understood" does not adopt a standard at odds with the standard applied in *Kostic v. Smedley*, 522 P.2d 535 (Alaska 1974). In *Kostic* the court adopted the standard used for determining whether an accused is competent to stand trial as the standard in extradition proceedings. *Kostic*, 522 P.2d at 538. This standard provides that the individual must have the present ability to consult with his attorney with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).

In my view, the degree of mental competence necessary in order for a person to participate in an extradition proceeding is far less than is required in a trial on the merits because of the limited issues that are considered in such a proceeding. The *Kostic* standard would encourage alleged fugitives to raise the issue of mental competence in extradition proceedings, thus causing further delay in extradition. Delay many times adversely affects the trial by causing loss of evidence. I see no reason to encourage delay by adopting the *Kostic* standard since the individual's mental competence may be raised in the demanding state before or at the time of trial. In a habeas corpus proceeding, the court should test the issue of mental competence by determining whether the individual is so

incompetent as to be totally unable to assist his counsel. This standard is sufficient to protect the rights of the individual in light of the limited issues for which he will be called upon to assist his counsel.

Thus, I would affirm the district court's order discharging the writ of habeas corpus.