OPINION OF THE COURT
Jerome Hornblass, J.
The defendant, Stephen R. Kent, moves for a stay of extradition proceedings.
*506 Mr. Kent is alleged to be a fugitive from justice in Ohio. On March 6, 1986, he was indicted by a Grand Jury in that State charging him with the crime of extortion. He was subsequently located in New York, where he was arrested and arraigned on a fugitive complaint in the Criminal Court of the City of New York on June 10, 1986 before the Honorable Herbert J. Adlerberg. Judge Adlerberg directed that a psychiatric examination of Mr. Kent be conducted pursuant to CPL article 730 with respect to Mr. Kent’s competency to proceed with extradition proceedings.
On July 3, 1986, psychiatric examinations were conducted by Drs. Murray A. Gordon and Myles S. Schneider, two qualified psychiatrists designated by the Commissioner of Mental Health and Retardation of the City of New York to examine Mr. Kent. Dr. Gordon’s examination revealed that Mr. Kent’s "ability to contain his delusional thinking is faulty, grossly impaired and it is highly doubtful that he could contain his psychotic thinking for a requisite period of time as would be required for legal purposes. Likewise, his ability to cooperate with his attorney is likely to be substantially impaired”. Dr. Schneider found that Mr. Kent "appeared to lack the capacity to cooperate rationally with his counsel”. Both examining psychiatrists found Mr. Kent unfit to proceed with the extradition process.
On August 8, 1986, a Governor’s warrant, issued by the Honorable Mario Cuomo, Governor of the State of New York, which ordered Mr. Kent released to the custody of agents from the State of Ohio, was presented to this court.
The question presented by this case is whether the extradition proceedings wherein the State of Ohio seeks the return of Mr. Kent on a fugitive warrant should be stayed until Mr. Kent is restored to a state of competency.
The extradition clause of the US Constitution (art IV, § 2 [2]) sets forth the basis for extradition between the States: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.”
The purpose of the extradition clause was explained by the United States Supreme Court in Michigan v Doran (439 US 282, 287-288 [1978]). "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as *507 possible in the state where the alleged offense was committed. Biddinger v. Commissioner of Police, 245 U.S. 128, 132-133 (1917); Appleyard v. Massachusetts, 203 U.S. 222, 227 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize’ the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. Compare Biddinger, supra, with McLeod v. Dilworth Co., 322 U.S. 327, 330 (1944). In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy.”
The extradition clause is implemented by the Uniform Criminal Extradition Act, which has been adopted by New York in CPL article 570. CPL 570.06 and 570.08 make it the duty of the Governor of New York State, upon proper demand from the executive authority of any other State, to extradite any person "substantially charged” in that State with a crime who has fled to this State.
The United States Supreme Court has established limitations on the scope of the inquiry that may be pursued in a State court by a defendant challenging extradition. In Michigan v Doran (439 US, at p 289), the court stated: "Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.”
New York courts have recognized substantially the same limitations, thereby restricting the scope of inquiry by the court in the asylum State in a habeas corpus proceeding to determine the sufficiency of a warrant of extradition to three areas: whether the prisoner is the person named in the warrant; whether he or she was in the demanding State at the time of the alleged crime; and whether he or she is substantially charged with a crime under the laws of the demanding jurisdiction (People ex rel. Mallin v Wilson, 79 Misc 2d 575; *508 People v Miller, 74 Misc 2d 806; People ex rel. Shurburt v Noble, 4 AD2d 649).
The People take the position that defendant’s psychiatric status presents no legal obstacle to his immediate extradition to the State of Ohio. In the first place, they contend, CPL article 730 does not apply to extradition proceedings. Moreover, the People contend, mental competence is not a proper issue for consideration in an extradition proceeding.
The People’s assertion that CPL article 730 does not apply to extradition proceedings is technically correct. CPL 730.30 (1) refers to proceedings upon an accusatory instrument, the definition of which (CPL 1.20 [1]) does not include extradition warrants authorized by CPL 570.18. The Appellate Division, Second Department, however, has ruled that a proceeding in the nature of an article 730 proceeding would be appropriate in determining a person’s fitness to proceed in an extradition hearing (Matter of Welkes v Brennan, 79 AD2d 644 [1980]).
Nevertheless, the People refer to two cases for the proposition that mental competence is not a proper issue for consideration in an extradition proceeding. (Charlton v Kelly, 229 US 447 [1913]; State ex rel. Davey v Owen, 133 Ohio St 96, 12 NE2d 144 [1937].) These decisions, however, address the question of incompetence at the time the crime was committed, or a present incompetence to stand trial for those charges in the demanding State. They conclude that these insanity issues can and should be raised at the time of trial in the demanding State. However, they do not address the question of the defendant’s fitness to participate and assist in the extradition proceeding itself.
The question concerning defendant’s ability to participate and assist in the extradition proceeding arises from defendant’s statutory rights as well as his constitutional right to due process. The statutory rights referred to are derived from CPL 570.24 which requires that the accused be brought before a Judge prior to delivery to the demanding authority in order to be afforded his rights, which include assistance of counsel and habeas corpus to challenge extradition.
Defendant’s rights to due process must also be afforded. Extradition involves a curtailment of liberty (Ierardi v Gunter, 528 F2d 929 [1st Cir 1976]), thus leading several courts to conclude that habeas corpus proceedings to test the legality of extradition will be considered criminal in nature (Kostic v Smedley, 522 P2d 535 [Alaska 1974]; Mora v District Ct., 177 *509 Col 381, 494 P2d 596 [1972]). Having reached this conclusion, the Kostic court then stated:
"In the context of a criminal trial, the conviction of an accused person who is not mentally competent to stand trial violates due process [citing, by footnote, Pate v Robinson, 383 US 375, 86 S Ct 836, 15 L Ed 2d 815 (1966); Carroll v Beto, 421 F2d 1065, 1067 (5th Cir 1970)]. In order to afford due process of law, it must appear that the accused has a present ability to consult with his attorney with a reasonable degree of rational understanding, and that he has a rational as well as a factual understanding of the proceedings against him [citing, by footnote, Dusky v United States, 362 US 402, 80 S Ct 788, 4 L Ed 2d 824-825 (1960)].
"We apply this same standard in habeas corpus-extradition proceedings. In order to give meaning to the alleged fugitive’s right to bring a habeas corpus action to test the legality of his arrest, and to give meaning to his right to demand and procure legal counsel, it is essential to due process that such person has sufficient mental competency to understand the proceedings and to consult with and assist his counsel in such proceedings.” (522 P2d, at pp 537-538.)
The same or a similar standard articulated by the United States Supreme Court in Dusky (supra) and adopted by the Alaska Supreme Court in Kostic (supra) had been utilized by the majority of States which have dealt with the question concerning defendant’s competency in habeas corpus proceedings to challenge extradition (Pruett v Barry, 696 P2d 789 [Col 1985]; State v Tyler, 398 So 2d 1108 [La 1981]; State ex rel. Jones v Warmuth, 272 SE2d 446 [W Va 1980]; Matter of Welkes v Brennan, 79 AD2d 644 [1980], supra; People ex rel. Fusco v Sera, 123 Misc 2d 19 [1984]).
I am aware that the Kentucky Supreme Court has held that the mental competence of a fugitive in extradition proceedings is irrelevant even as related to the narrow issues involved in such proceedings (Kellems v Bruckignani, 518 SW2d 788 [Ky 1974]). For the reasons stated above, I decline to follow the Kentucky rule.
In order for this court to conduct a fair inquiry into the issues which may be raised by the defendant challenging extradition, the defendant must have sufficient mental competency to understand the nature of these proceedings against him, and to consult with and assist counsel. His ability to understand the proceedings and cooperate with his counsel *510 may be critical to the outcome of issues where his own knowledge is necessary (i.e., his presence in the demanding State at the time the offense was committed, and his identity as the person named in the extradition papers).
In view of the findings following the psychiatric examinations of the defendant, Stephen R. Kent, it is the judgment of this court that Mr. Kent is an incapacitated person within the meaning of CPL 730.10 (1).
Accordingly, I direct that Mr. Kent be committed to the custody of the New York State Commissioner of Mental Hygiene for care and treatment in an appropriate institution for a period not to exceed one year from the date of this order. I further direct the Commissioner to provide for periodic reexaminations of the defendant, at intervals not to exceed 90 days. Such reexamination shall be conducted by qualified psychiatric examiners within the meaning of CPL 730.10 (7). In the event that any such reexaminations reveal that the defendant is fit to proceed, the Commissioner shall report that fact to this court.