Nos. 98,470
98,471

STATE OF KANSAS, *Appellee*, v. DAVID R. PATTON, *Appellant*.
DAVID R. PATTON, *Appellant*, v. ELIZABETH GILLESPIE, Director, Shawnee County Adult Detention Division, *Appellee*, and
STATE OF KANSAS, *Intervenor/Appellee*.

(176 P.3d 151)

Opinion filed February 1, 2008.

*Ronald F. Evans*, of Death Penalty Defense Unit, argued the cause and was on the briefs for appellant.

*Robert D. Hecht*, district attorney, argued the cause, and *Jamie L. Karasek*, assistant district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case presents issues of first impression: In an extradition proceeding under K.S.A. 22-2701 *et seq.*, is an alleged fugitive's competency a proper subject of inquiry and, if so, what is the standard for determining competency? We conclude that in order to give meaning to and allow the full exercise of an alleged fugitive's statutory right to counsel and right to raise defenses in an extradition proceeding under K.S.A. 22-2701 *et seq.*, an alleged fugitive may challenge whether he or she possesses a present ability to consult with an attorney with a reasonable degree of rational understanding on the issues of whether he or she (1) is the person named in the request for extradition and (2) is a fugitive.

This case arises out of an attempt by the state of Florida to extradite David R. Patton. Patton is wanted on an arrest warrant out of Florida for two counts of capital murder, burglary to a dwelling, grand theft, and grand theft of a motor vehicle. On September 23, 2006, he was arrested in Shawnee County, Kansas, and charged with being a fugitive from justice from the state of Florida, in violation of the Kansas Uniform Criminal Extradition Act, K.S.A. 22-2701 *et seq.*, specifically K.S.A. 2006 Supp. 22-2713.

Patton challenged extradition and filed a petition for writ of habeas corpus under K.S.A. 60-1501. In the fugitive case, Patton filed a motion to determine competency. The State opposed the competency motion, arguing there was no authority to support the consideration of competency as part of an extradition proceeding.

On January 10, 2007, the district court held a hearing on the two matters. First, the court denied Patton's motion to determine competency, finding that competency is not an extradition requirement. Next, the court concluded that the State met the requirements of K.S.A. 22-2703 and that Patton was afforded his rights under K.S.A. 22-2710. The court then denied the petition for habeas corpus. At Patton's request, the court stayed its orders to allow Patton to file an appeal concerning the competency issue.

Patton appealed both decisions to the Court of Appeals, and the appeals were consolidated. The State then filed a motion for summary disposition under Kansas Supreme Court Rule 7.041 (2007 Kan. Ct. R. Annot. 53), arguing that the holding in *Brewer v. Turner*, 165 Kan. 330, 194 P.2d 507 (1948), controls. The Court of Appeals agreed and issued an order granting the State's motion.

We granted Patton's petition for review.

Patton argues that an alleged fugitive's present competency is a proper subject of inquiry in an extradition proceeding. He urges this court to adopt a broad approach to this issue by holding that a fugitive in an extradition proceeding must be sufficiently competent to understand the nature of the proceeding and to consult with his or her counsel regarding the proceeding. The State counters that the accused's competency is not among the limited issues to be addressed in such a proceeding and further asserts that *Brewer*, 165 Kan. 330, answers the question.

The questions of whether competency is a proper inquiry in an extradition proceeding and, if so, what standard applies, are questions of law. We review legal questions under a de novo standard of review. See *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007); *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

## General Principles Regarding Extradition

Proceedings for the interstate extradition of prisoners are controlled by the federal Constitution and federal law. *Sanders v. Conine*, 506 F.2d 530, 532 (10th Cir. 1974); *Hill v. Roberts*, 359 So. 2d 911, 912 (Fla. Dist. App. 1978); *People ex rel. Dimas v. Shimp*, 83 Ill. App. 3d 150, 152, 403 N.E.2d 750 (1980); *Prettyman v. Karnopp*, 192 Neb. 451, 455, 222 N.W.2d 362 (1974). More specifically, extraditions are controlled by Article IV, § 2 of the United States Constitution, which provides in part:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

Kansas has implemented the requirements of the federal Extradition Clause by adopting the Uniform Criminal Extradition Act (UCEA), K.S.A. 22-2701 *et seq.* The federal counterpart is 18 U.S.C. § 3182 (2000).

In *Michigan v. Doran*, 439 U.S. 282, 288-89, 58 L. Ed. 2d 521, 99 S. Ct. 530 (1978), the United States Supreme Court held: "[T]he courts of an asylum state are bound by Art. IV, § 2, . . . by [18 U.S.C.] § 3182, and, where adopted, by the Uniform Criminal Extradition Act." A state may not impose more stringent standards or refuse a demand for extradition on the basis of requirements not articulated by federal law. *Dunn v. Hindman*, 18 Kan. App. 2d 537, 544, 855 P.2d 994, *rev. denied* 253 Kan. 857 (1993); *Breckenridge v. Hindman*, 10 Kan. App. 2d 50, 53, 691 P.2d 405 (1984), *rev. denied* 236 Kan. 875 (1985).

In view of the constitutional mandate for extradition, the United States Supreme Court has recognized that extradition proceedings were intended to be limited in scope in order to facilitate a swift and efficient transfer of custody to the demanding state:

"Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. [Citations omitted.] The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

" '. . . [Extradition] is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.' " *Doran*, 439 U.S. at 288 (quoting *In re Strauss*, 197 U.S. 324, 332-33, 49 L. Ed. 774, 25 S. Ct. 535 [1905]).

Generally a district court's review powers in the asylum state, therefore, are limited. Once a governor has granted extradition, a court considering release on habeas corpus can do no more than decide:

"(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." *Doran*, 439 U.S. at 289.

See *Pacileo v. Walker*, 446 U.S. 1307, 1309, 64 L. Ed. 2d 221, 100 S. Ct. 1633 (1980).

In *Kennon v. State*, 248 Kan. 515, 521, 809 P.2d 546 (1991), this court discussed *Doran* and explained that being a "fugitive" means the accused was in the demanding state when the alleged crime was committed. Further, the court distinguished between mandatory extradition under K.S.A. 22-2702, which applies when it is alleged the person was in the demanding state at the time the alleged crime was committed, and discretionary extradition under K.S.A. 22-2706, which applies when it is alleged the person committed an act in Kansas or a third state that intentionally resulted in a crime in the demanding state. 248 Kan. at 522-23. This court also discussed the fugitive requirement in *State v. Smith*, 232 Kan. 128, 652 P.2d 703 (1982), where the court concluded that extradition had been appropriately ordered even though Smith disputed his presence in the demanding state on the dates of the alleged crime. Smith admitted to having been in the demanding state around the time of the alleged crime and to being the person identified in the demand.

The *Smith* decision is illustrative of a long line of Kansas cases in which it has been determined that an extradition proceeding in the asylum state is not the proper forum for considering defenses or resolving the issue of guilt or innocence. Those matters must be raised at trial in the demanding state. See *Perry v. Gwartney*, 162 Kan. 607, Syl. ¶ 2, 178 P.2d 185 (1947); *Dunn*, 18 Kan. App. 2d at 545; see also *California v. Superior Court of California*, 482 U.S. 400, 407-08, 96 L. Ed. 2d 332, 107 S. Ct. 2433 (1987); *Biddinger v. Commissioner of Police*, 245 U.S. 128, 135, 62 L. Ed. 193, 38 S. Ct. 41 (1917); *Pettibone v. Nichols*, 203 U.S. 192, 206, 51 L. Ed. 148, 27 S. Ct. 111 (1906). But Patton does not raise issues regarding his competency at the time of the crime or his competency to stand trial; rather, the focus of this appeal is on his competency during the extradition procedure itself.

### *Brewer v. Turner*

The distinct time frames at which competency may be an issue— the time of the offense, the time of extradition, the time of trial, or the time of execution of a sentence—must be considered when applying *Brewer*, 165 Kan. 330, the case upon which the Court of Appeals relied in rejecting Patton's contention that he is entitled to a competency inquiry in an extradition proceeding. Brewer was a fugitive from California when he was adjudged to be insane in Oklahoma and was committed to a state hospital. He left the state hospital, but it was not settled whether Brewer escaped or was discharged. Brewer was eventually arrested in Kansas on a warrant issued by the Kansas Governor on the request of California authorities.

Brewer challenged extradition and argued, *inter alia*, that he had been declared legally insane in Oklahoma and must, therefore, be presumed to be presently insane because he had never been restored to sanity. According to Brewer, California was bound by that insanity determination and presumption. And, because California prohibits trying and punishing a person who is insane, he could not be extradited.

This court rejected Brewer's contention and held:

"[W]here habeas corpus is invoked to defeat extradition, whether the prisoner was insane at the time of the commission of the offense with which he is charged in the demanding state, or is presently insane, is not a question to be decided in a habeas corpus proceeding brought in the asylum state [citation omitted] and . . . courts in the asylum state have no authority in habeas corpus proceedings to consider the present sanity or insanity of an alleged fugitive from justice [citation omitted]." 165 Kan. at 335.

The holding in *Brewer*, however, was not a determination of whether a court in an extradition proceeding should allow an inquiry into an alleged fugitive's present competency to understand the nature of the proceeding. Instead, this court's statement regarding "present sanity" related to the argument that the state of California was bound by the determination of insanity in Oklahoma with regard to the question of whether the fugitive should be excused from serving the unexpired portion of his California sentence. See 165 Kan. at 333, 335. The *Brewer* holding fails to unequivocally answer the question presented in this case.

In ordering summary disposition in reliance on *Brewer*, the Court of Appeals failed to distinguish the issue of competency during the extradition proceeding versus competency at other phases of the criminal proceeding. The distinction has been recognized in other states. Those states which have considered the specific issue now before us consistently conclude that competency to stand trial is not relevant in an extradition proceeding under the holding of *Charlton v. Kelly*, 229 U.S. 447, 461-62, 57 L. Ed. 1274, 33 S. Ct. 945 (1913), and such competency must be raised in the demanding state. Yet, these courts recognize that competency during the extradition proceeding is a separate issue regarding which there is no controlling federal authority. See, *e.g., Kostic v. Smedley*, 522 P.2d 535, 537 (Alaska 1974); *Oliver v. Barrett*, 269 Ga. 512, 513-14, 500 S.E.2d 908 (1998). *Brewer* does not address this later category and does not control the question before us.

Moreover, besides not squarely addressing the issue raised by Patton, *Brewer* predates Kansas' adoption of the UCEA.

## Other Jurisdictions

Most states that have applied the UCEA to the issue before us

have determined the alleged fugitive must be sufficiently competent to be able to consult with counsel in the extradition proceeding regarding the limited defenses available. Two rationales have been adopted. First, the courts uniformly recognize that the UCEA provides the statutory right to counsel in an extradition proceeding and the right to test the legality of the arrest in the asylum state. Accordingly, in order for those rights to have meaning, the alleged fugitive must have the mental competency to consult with and assist counsel in the extradition proceeding. Second, some courts recognize that the proceeding involves a potential deprivation of liberty and, therefore, due process is demanded. *E.g., Kostic*, 522 P.2d at 537.

## *Kostic*

The Alaska Supreme Court was the first court to address the relevance of competency in an extradition proceeding. In *Kostic*, 522 P.2d 535, the fugitive sought habeas corpus relief in Alaska courts to avoid extradition to Florida. He raised the question of his competency to proceed at the habeas corpus hearing and was denied relief. The record showed that Kostic had been examined by a psychiatrist in connection with a separate criminal action then pending in Alaska. That examination was ordered by the court because of Kostic's previous history of psychiatric illness and his attempt to commit suicide while in jail. Civil commitment proceedings were then initiated; Kostic was found mentally ill and was committed for treatment. He remained hospitalized at the time of the extradition proceedings.

The *Kostic* court stated that a situation might exist in which a petitioner is so incompetent as to be unable to assist counsel in a habeas corpus proceeding in connection with a pending extradition, and it concluded that this was one such case. 522 P.2d at 537. The *Kostic* court mentioned that a person in this situation has an express statutory right to challenge the legality of the arrest and " 'to demand and procure legal counsel.' " 522 P.2d at 537. The court further emphasized, however, that if the arrestee "could not understand the nature of the habeas corpus proceedings or assist counsel in testing the legality of the arrest," then legal represen-

tation "would be a farce." 522 P.2d at 537. The result, according to the *Kostic* court, would cause the statutory right to representation to become a nullity. 522 P.2d at 537.

This reasoning led the *Kostic* court to conclude that conducting an extradition proceeding while the petitioner is mentally incompetent violates due process. Noting that habeas corpus proceedings are traditionally considered to be civil, the court stated: "But where a possible deprivation of one's liberty is involved, as it is in an extradition matter, habeas corpus proceedings in relation to extradition will be considered criminal in nature." 522 P.2d at 537 (citing *Mora v. Dist. Ct.*, 177 Colo. 381, 494 P.2d 596 [1972]).

Observing that in the criminal trial context it is a violation of due process to convict a person who is mentally incompetent to stand trial, the court then applied this standard to extradition proceedings. Consequently, the court held that Kostic's extradition had to be stayed until his competency was restored. 522 P.2d at 538-39.

### Meaningful Rights

Since *Kostic*, a majority of the states considering the issue before us has recognized that in order to give effect to an alleged fugitive's right to counsel and his or her right to test the legality of the arrest, the alleged fugitive must have some level of competency. For example, the Massachusetts Supreme Court noted that the state legislature could have provided that once the Governor issues a rendition warrant the defendant must be returned summarily to the demanding state. Instead, it specifically gave the defendant the right to counsel and the right to challenge the legality of the proceeding. "Having determined a judicial hearing is required, the statutory right to counsel is meaningless if the petitioner is so incompetent that he is unable to comprehend what is occurring and to assist counsel." *Hinnant, Petitioner*, 424 Mass. 900, 906-07, 678 N.E.2d 1314 (1997).

Similarly, a New York court stated that the right to counsel would be rendered "a meaningless formality because of an inability to understand the nature of the extradition proceeding or to assist [counsel] in either waiving or challenging extradition on the narrow grounds available in this summary proceeding." *Welkes v. Brennan*,

79 A.D. 2d 644, 644, 433 N.Y.S.2d 817 (1980); see also *Ex Parte Potter*, 21 S.W.3d 290, 296 (Tex. Crim. 2000) ("Given that an alleged fugitive is entitled to counsel and entitled to challenge the legality of his arrest and assert defenses on the basis of which the extradition warrant may be dismissed, the accused must be sufficiently competent to discuss with his counsel facts relating to the limited defenses that may be raised."); *State ex rel. Jones v. Warmuth*, 165 W. Va. 825, 836, 272 S.E.2d 446 (1980) ("[I]n order to give meaning to a fugitive's right to test the legality of this arrest on the issue of his identity and presence in the demanding state at the time the crime was allegedly committed, and to give meaning to his right to have legal counsel, it is essential to due process that such person has sufficient mental competency to understand the proceeding and to consult with and assist his counsel in such proceeding.").

### Deprivation of Liberty

At least five states—Alaska, Colorado, West Virginia, Massachusetts, and New York—have partially based their decisions to permit consideration of mental competency on the notion that extradition involves a deprivation of liberty. See, *e.g.*, *Kostic*, 522 P.2d at 537; *Mora*, 177 Colo. at 384; *Hinnant*, 424 Mass. at 907-08; *People v. Kent*, 133 Misc. 2d 505, 508, 507 N.Y.S.2d 353 (1986).

In *Warmuth*, the West Virginia court observed that, consistent with the "criminal nature" of extradition proceedings, an accused has the statutory right to " 'demand and procure' " counsel. 165 W. Va. at 832. An indigent accused is also entitled to counsel under West Virginia law. In addition, independent of West Virginia statutes, the *Warmuth* court observed that it traditionally employs a higher standard of protection for an individual in proceedings involving the deprivation of liberty. 165 W. Va. at 833.

The *Warmuth* court concluded: " 'We eschew the rubric of "criminal" versus "civil" in determining what process is fair. The characteristics and ramifications of a proceeding, rather than its label, spawn due process requirements.' " 165 W. Va. at 833.

The common thread in this limited line of cases is the reticence to deprive an alleged fugitive of the right to due process because

of the possibility that his or her liberty will be taken away. Given that due process applies, these courts reason that the extradition court must assure that the right to counsel and the right to present defenses are meaningful.

### Competency as Irrelevant

Only one state, Kentucky, holds that the mental competency of a fugitive in extradition proceedings is irrelevant as related to the narrow issues involved in such proceedings. In *Kellems v. Buchignani*, 518 S.W.2d 788 (Ky. 1974), the Kentucky Court of Appeal, in a two-paragraph split opinion, disposed of the issue in a single sentence: "After careful review of the records and the briefs, this court is of the opinion that the question of the mental competence of a fugitive in extradition proceedings is not relevant." 518 S.W.2d at 788 (citing *Charlton v. Kelly*, 229 U.S. 447, and *State, ex rel., v. Owen*, 133 Ohio St. 96, 12 N.E.2d 144 [1937]). Four justices concurred without opinion. Another justice issued a strenuous dissenting opinion (joined by a second justice), arguing that a fugitive ought to have the degree of mental competency necessary to participate rationally in the limited nature of extradition proceedings. 518 S.W.2d at 789 (Palmore, J., dissenting).

Neither of the two cases cited by the *Kellems* majority supports its holding. In *Charlton*, the United States Supreme Court discussed the exclusion of evidence of the accused's insanity, noting that if the evidence pertained to the accused's present ability to defend against the allegations or his insanity at the time of the commission of the crime, it should be heard by the court in the jurisdiction of the crime. 229 U.S. at 462. In *Owen*, the Ohio Supreme Court addressed the question of whether lunacy proceedings concerning the alleged fugitive's present sanity that were ongoing in a probate court would prevent extradition. Stating that the probate court's proceedings were civil and involved standards that differed substantially from an assessment of sanity in the context of a criminal trial, and noting the holding in *Charlton*, the Ohio court held the probate court's proceedings would not deter the extradition. *Owen*, 133 Ohio St. at 105-06. Although the question of the accused's present sanity was apparently at issue in an ongoing

civil proceeding, his competency to understand the extradition proceedings was never raised or discussed. See also *Romeo v. Roache*, 820 F.2d 540, 544 (1st Cir. 1987) (short of evidence that accused person is catatonic, totally unable to communicate, or has lost all contact with reality, competency is not proper subject of inquiry in extradition proceeding).

Similarly, other state courts have held or noted that the competency of the alleged fugitive is irrelevant in extradition proceedings but have done so without analyzing the question of competency as it relates to the narrow issues involved in an extradition proceeding and have cited *Charlton* as supporting authority. See, *e.g., State ex rel. Buster v. Purdy*, 219 So. 2d 43 (Fla. Dist. App. 1969); *In re Cohen*, 23 N.J. Super. 209, 92 A.2d 837 (1952). Those cases, therefore, do not lend assistance here.

## Application in Kansas

In light of these varying approaches we must determine which approach to follow. Consistent with the reasoning of most other state courts addressing the issue we face today, the Kansas statutory provision setting out the extradition procedure, K.S.A. 22-2710, provides that the alleged fugitive shall be taken before a judge "who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel." The statute also gives the alleged fugitive the right to "test the legality of his arrest." K.S.A. 22-2710 is specific in providing the right personally to the alleged fugitive, stating "if the *prisoner or* his counsel shall state that *he or they* desire to test the legality of his arrest," the judge shall allow the alleged fugitive to apply for a writ of habeas corpus. Hence, the statute is directly contrary to the State's assertion at oral argument that this right can be effectively tested by competent counsel without the alleged fugitive's involvement; the legislature chose to give the right to the alleged fugitive, not simply to make the attorney a type of guardian ad litem.

Additionally, K.S.A. 2006 Supp. 22-4503(a) specifies that a "defendant in an extradition proceeding" is entitled to have assistance of counsel at the proceeding. If such defendant is indigent, he or

she is entitled to appointment of counsel. See K.S.A. 2006 Supp. 22-4503. Our case law consistently holds that where a right to counsel exists, that right should be meaningful and, when competency is at issue, the court should consider whether the defendant is able to assist counsel in presenting a defense. See generally *Brown v. State,* 278 Kan. 481, 483-85, 101 P.3d 1201 (2004) (statutory right to counsel creates right to effective assistance); *State v. Reed,* 248 Kan. 506, 512, 809 P.2d 553 (1991) (holding that standard for determination of competency "is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' *Dusky v. United States,* 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 [1960].").

We agree with the majority of states considering the specific issue before us and conclude that the right to counsel and the right to test the legality of the extradition procedure would be meaningless if the alleged fugitive does not possess some level of competency. Clearly, the alleged fugitive's ability to assist counsel may be critical to the outcome of issues where his or her own knowledge is necessary (*i.e.,* his or her identity as the person named in the extradition papers and his or her presence in the demanding state at the time the offense was committed).

We acknowledge the accuracy of the State's argument that inserting competency evaluations into extradition proceedings may cause delay and added expense. We reject, however, the State's assertion that delay or cost is a reason to adopt a different standard. The legislature created an adversarial procedure, and delay and cost are inherent in an alleged fugitive's decision to challenge the validity of the arrest. Testing competency will not unduly burden that proceeding in most cases, and whatever delays and expenses are incurred do not justify reducing the alleged fugitive's right to counsel and right to present a defense in extradition proceedings.

## Standard for Competency

Given the summary nature of the proceeding and the limited issues upon which the alleged fugitive's input is essential, there

remains the question of what level of competency is required. Among the jurisdictions recognizing that some level of competency is required, there are basically two different approaches regarding the degree of competency required—"broad" and "middle of the road."

### Broad Approach to Competency

The jurisdictions taking the broad approach to competency hold that the alleged fugitive in an extradition proceeding must be "sufficiently competent" to "have a rational as well as factual understanding of the proceedings" in addition to the "present ability to consult with" his or her counsel. See *Pruett v. Barry*, 696 P.2d 789, 791-93 (Colo. 1985). This is the same standard mandated by the United States Supreme Court in the context of determining competency to stand trial. See *Dusky*, 362 U.S. at 402. Alaska's *Kostic* is one example of a case embracing the broad approach. See 522 P.2d at 539 ("On remand the court shall make an express determination of whether appellant, as a result of mental disease, lacks the ability to aid his counsel and comprehend the nature of the habeas corpus-extradition proceedings with a reasonable degree of rational understanding."); see also, *e.g.*, *Hinnant*, 424 Mass. at 907-08; *Kent*, 133 Misc. 2d at 508-11.

### Middle of the Road Approach to Competency

Three states—Georgia, Texas, and Louisiana—have adopted the "middle of the road" approach, maintaining that the mental competency of an alleged fugitive is only relevant to the extent it concerns his or her ability to assist counsel in ascertaining and preparing for the limited issues to be decided in an extradition hearing. See *State v. Tyler*, 398 So. 2d 1108, 1112 (La. 1981) (alleged fugitive must not be "so incompetent as to be totally unable to assist counsel" in extradition proceeding). The Georgia Supreme Court explained its rationale as follows:

"We are persuaded by, and adopt, the [middle of the road] approach because it best comports with the summary nature of an extradition proceeding, and the principles and goals articulated in *Doran*.

". . . *Doran* limits the inquiry in an extradition proceeding to four issues . . . . Of these four issues, a petitioner's mental competence realistically impacts only

upon the last two—identity and fugitive status. [Citation omitted.] Thus, where, as here, a petitioner in an extradition proceeding claims he is mentally incompetent, the habeas corpus court need only determine whether the petitioner is sufficiently competent to assist counsel in ascertaining his identity and whereabouts at the time of the crime." *Oliver v. Barrett*, 269 Ga. at 514.

See also 31A Am. Jur. 2d, Extradition § 127, p. 786 ("Mental competency of a fugitive is only relevant insofar as it concerns his or her ability to assist counsel in ascertaining and preparing for the limited issues to be decided in an extradition hearing.").

In *Ex parte Potter*, the Texas Criminal Court of Appeals reiterated the summary nature of the extradition proceeding. The court then observed that the Texas Uniform Extradition Act gives an individual arrested pursuant to an extradition warrant the " 'right to demand and procure legal counsel.' " 21 S.W.3d at 294. The Texas Act also allows such an individual or his or her attorney to " 'test the legality of [the] arrest.' " 21 S.W.3d at 294. The *Potter* court concluded, therefore, that a petitioner could contest his or her extradition on the basis of any of the four issues identified in *Doran*, 439 U.S. 282 (1978), and would be entitled to discharge the extradition if successful in his or her defense. 21 S.W.3d at 294.

With respect to mental competency, the *Potter* court agreed with the majority of other jurisdictions to the extent they recognize that an alleged fugitive must be "sufficiently competent" to discuss with counsel facts relating to the limited issues that may be raised. 21 S.W.3d at 296. This is because the alleged fugitive is entitled to counsel, entitled to challenge the legality of his or her arrest, and entitled to assert defenses on the basis of which the extradition warrant may be dismissed. But the *Potter* court was ultimately persuaded that the middle of the road approach best addressed the alleged fugitive's rights within the limited context of an extradition proceeding. 21 S.W.3d at 296-97.

The *Potter* court reasoned that the alleged fugitive does not need a broader understanding of the proceedings and a greater ability to consult with his or her attorney because of the summary nature of an extradition and because of the asylum court's narrow role. Further, maintaining a narrow focus in ascertaining competency

keeps the proceedings quicker and more efficient. See 21 S.W.3d at 297.

## Kansas Standard

The rationale of the courts adopting the middle of the road approach is persuasive. This narrower approach more closely comports with the summary nature of extradition proceedings, while assuring that the defendant has a sufficient understanding of the issues in order to assist counsel and present defenses. The issues of whether the extradition documents on their face are in order and whether the alleged fugitive has been charged with a crime in the demanding state can be tested by counsel without assistance from the alleged fugitive and, therefore, both the right to counsel and the right to present defenses are not eroded if an alleged fugitive lacks the ability to comprehend the legal documents at issue.

While we lack the expertise to determine whether mental health professionals can carve the fine lines between the standards, from a legal standpoint the only two defenses on which the alleged fugitive's assistance is necessary to test the validity of the extradition are the questions of whether he or she (1) is the person named in the request for extradition and (2) is a fugitive. We, therefore, conclude the statutory right of counsel and the right to present those limited defenses applicable to an extradition proceeding will have been made available if the alleged fugitive has the present ability to consult with his or her lawyer with a reasonable degree of rational understanding of those two issues.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.