Filed 9/22/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GUADALUPE FABIAN RAMIREZ, | D072473 |
| Petitioner, | |
| v. | (Imperial County Super. Ct. No. JCF37805) |
| THE SUPERIOR COURT OF IMPERIAL COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Christopher J. Plourd, Judge.  Petition granted; stay vacated.

Benjamin Salorio, Imperial County Public Defender, James S. Smith, Assistant Public Defender, and Jason Michael Folker, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Gilbert G. Otero, Imperial County District Attorney, Deborah D. Owen, Assistant District Attorney, and Martin Albert Gonzalez, Deputy District Attorney, for Real Party in Interest.

Guadalupe Fabian Ramirez petitions this court for a writ of mandate directing the superior court to vacate its order extraditing him to Arizona. Ramirez contends he is mentally incompetent and the court's order extraditing him violates his due process rights. Ramirez seeks placement in an appropriate mental health facility, as described by California's criminal competency statutes, until he can be restored to competency. (See Pen. Code, § 1367 et seq.)[1]

We agree that the superior court's extradition order must be vacated, but for different reasons than those initially asserted by Ramirez. We requested and received supplemental briefing regarding the Interstate Compact for Adult Offender Supervision (ICAOS) and its effect on the proceedings below. The record shows that Ramirez was an Arizona probationer who had his supervision transferred to California under the ICAOS. Arizona requested his return based on probation violations that occurred in California, not based on any new crimes committed in Arizona, and made its request under the ICAOS. Ramirez's return to Arizona is therefore governed by ICAOS rules, not California's extradition statutes. ICOAS rules require a probable cause hearing where, as here, an offender will face revocation proceedings upon his or her return. The

---

[1]     Further statutory references are to the Penal Code unless otherwise specified.

2

proceedings below did not comply with ICAOS rules governing probable cause hearings. The court therefore erred by ordering Ramirez's extradition.

For the benefit of the superior court on remand, we further consider the effect of Ramirez's incompetency on a probable cause hearing under ICAOS rules. Because the probable cause hearing is an extension of his criminal case in Arizona, and is in effect part of Ramirez's probation revocation proceedings, we conclude California's criminal competency statutes, section 1367 et seq., apply. The superior court must therefore proceed in accordance with those statutes on remand.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Ramirez pleaded guilty in Arizona state court to three felony sex offenses involving minors. The Arizona court sentenced him to 10 years in prison, to be followed by lifetime probation. Following his release from prison, Ramirez applied to transfer his probation to California under the ICAOS. As part of his application, Ramirez waived extradition and agreed to return to Arizona if directed.[2]

After several months, during which Ramirez apparently lived in California, the Arizona court received information that Ramirez had violated the terms of his probation.

---

[2]     As part of the application, on an ICAOS form, Ramirez agreed to the following: "I agree to return to Arizona (sending state) at any time I am directed to by the sending state or the receiving state. I know that I may have a constitutional right to insist that the sending state extradite me from the receiving state or any other state where I may be found. This is commonly called the right to extradition. But I also understand and acknowledge that I have agreed to return to the sending state when ordered to do so either by the sending or receiving state. Therefore, I agree that I will not resist or fight any effort by any state to return me to the sending state and I AGREE TO WAIVE ANY RIGHT I MAY HAVE TO EXTRADITION. I WAIVE THIS RIGHT FREELY, VOLUNTARILY AND INTELLIGENTLY."

3

An Arizona probation officer informed that court he had reason to believe the following terms had been violated: (1) "The defendant did not receive prior approval before changing residence. The defendant did not reside in a residence approved by the California Probation Department." (2) "The defendant did not attend sex offender treatment as directed by [the] supervising California probation officer." (3) "The defendant loitered near a McDonald's Playland on April 11, 2017, and April 14, 2017, a location known to the defendant as a place primarily used by children under the age of 18." The officer wrote in a "NOTE TO COURT" that he sought an "INTERSTATE COMPACT WARRANT" and referenced an ICAOS rule regarding the treatment of ICAOS offenders.

The Arizona court found probable cause to believe Ramirez had violated the terms of his probation and issued a warrant for his arrest. The Arizona court's order and the warrant were prominently marked "INTERSTATE COMPACT PROBATION VIOLATION." Notations on the warrant form stated "[o]kay to [e]xtradite" and referenced the Arizona sheriff's fugitive detail.

Approximately a week later, on May 2, 2017, the Imperial County Sheriff's Office filed a fugitive complaint against Ramirez. The complaint sought Ramirez's extradition under California's extradition statutes, section 1548 et seq. The complaint alleged that Ramirez had been charged with the crime of "PC 290 SEX REGISTRANT, FELONY" in Arizona and a warrant for his arrest on that crime had been issued there. It further alleged as follows: "That after said offense(s) had been committed, the said defendant did voluntarily leave the said state and the said defendant was and now is a fugitive from

4

justice and is now in the County of Imperial, State of California." The complaint requested "that a warrant may be issued for the arrest of said defendant who may then be dealt with according to law, pursuant to [section] 1551."

Ramirez was arrested and arraigned on the complaint. The court appointed counsel, and Ramirez denied the allegations. The court set an identification hearing in 10 days. At the hearing, defense counsel expressed doubt about Ramirez's mental competency. The court stayed the proceedings under section 1368, ordered a competency evaluation, and scheduled a status review hearing and a competency hearing.

At the status review hearing, the court (with a different judge presiding) expressed doubt that section 1368 applied to extradition proceedings but invited counsel to brief the issue. In the meantime, the court vacated the stay, rescinded the order for a competency evaluation, and reset the identification hearing. The court later confirmed its belief that section 1368 did not apply.

However, two mental health evaluators had already seen Ramirez and submitted their reports. Both evaluators diagnosed Ramirez with schizophrenia. One evaluator, Louis Blumberg, Ph.D., a clinical psychologist, concluded based on his examination that Ramirez "does not have the capacity to understand the charges; the ability to understand the purpose of the criminal process and the adversary system; nor the ability to relate pertinent facts or other information to assist counsel in presenting a defense." Blumberg noted that Ramirez was unable to maintain eye contact (and kept his hands covering his face), he was unable to maintain an articulate conversation, and he was unable to answer any questions pertaining to his competence. His thought process was disorganized, and

5

he kept repeating that he had spent 11 years in prison in Arizona and did not trust anyone, including his attorney and the judge. The other evaluator, Rakesh Bhansali, M.D., a psychiatrist, noted that Ramirez's thought process was disorganized and tangential, with paranoid delusions. Ramirez told Bhansali he heard the voices of female and male "hackers" that were " 'playing his mind' " and " 'playing cyberwarfare with him.' " Bhansali recommended inpatient treatment as the most appropriate, least restrictive placement to restore Ramirez's mental competency. He believed Ramirez had "a chronic psychiatric condition that requires psychotropic medication to control psychotic disorder symptoms" and that he "need[ed] to be supervised in order to assure compliance with the medications in order to avoid decompensation of his symptoms."

The identification hearing was held on June 28, 2017. The court allowed defense counsel to present evidence regarding Ramirez's competency to support his argument that his due process rights were violated by the extradition proceedings. Blumberg testified consistent with his report. He believed Ramirez's lack of cooperation was not intentional; it was caused by his mental disorder. Blumberg opined that Ramirez did not understand the identification hearing, did not have even a minimal ability to assist his counsel, and was unable to relate even basic pertinent information. He testified that Ramirez was incompetent to "stand in a hearing concerning only his identity," even setting aside the general standards applicable to criminal proceedings under section 1367.

The prosecution presented evidence regarding Ramirez's identity, including Arizona court records and booking photographs. It also presented testimony from a fingerprint examiner, who compared fingerprints from the Arizona records with

6

fingerprints taken upon Ramirez's arrest in California. The examiner concluded they were from the same person.

Among the Arizona records were the Arizona court order finding probable cause to believe Ramirez had violated probation, the Arizona warrant, and Ramirez's ICAOS application waiving extradition. Neither the superior court nor the parties referenced the ICAOS process, however. They proceeded under California's extradition statutes.[3]

After hearing the evidence, the court found that Ramirez was not competent, either under California's criminal competency statutes or in the specific context of extradition proceedings involving identity. The court explained, "[O]ther than the one statement that he did jail time in Arizona, . . . he was uncommunicative, so I don't feel that he is competent to assist counsel in the context of an extradition proceeding." But the court found that Ramirez's competence was "irrelevant" given the "overwhelming" evidence of identity. The court believed there would be nothing Ramirez could do, even if he were competent, to rebut the evidence of identity. The court stated, "So—but the question that the court has fundamentally is [whether] he [is] entitled to be competent here, and the court does find that in some cases there might be a due process right to competency. In this case, there is not, given the overwhelming nature of the evidence." The court further

---

[3] The court and the parties were aware of Ramirez's probationary status. In addition to the Arizona records, the prosecution made an offer of proof that Ramirez's California probation officer would testify about Ramirez's status and identity. The court found that testimony unnecessary because it was duplicative of the Arizona records: "The documents from Arizona show that he . . . was paroled. Parole was transferred here, interstate compact, et cetera. That's in the documents and so forth, so that doesn't add anything to the issues that need to be addressed."

found that Ramirez had waived any hearing when he waived the right to contest extradition. It explained, "I find that he waived his right to extradition [and] waived his right to an evidentiary hearing or identification hearing."

The court reiterated that there was "overwhelming evidence of identity that [Ramirez] is the person who is wanted from the State of Arizona . . . ." It made "a finding of identity and order[ed] that he be extradited to the State of Arizona." The prosecution told the court it would begin the process of obtaining a Governor's warrant for Ramirez's extradition under section 1552.

Ramirez filed the instant petition seeking relief and an immediate stay. We stayed the superior court's extradition order and later issued an order to show cause why the relief sought by Ramirez should not be granted. These proceedings followed.

## DISCUSSION

### I

As noted, Ramirez seeks a writ of mandate directing the superior court to vacate its extradition order and place him in an appropriate mental health facility until he can be restored to competency. In his petition, Ramirez argues that subjecting him to extradition proceedings while he is not mentally competent violates his due process rights. Although a number of other states have held that an alleged fugitive has at least a limited due

8

process right to mental competency in extradition proceedings, it appears no California court has addressed the issue.[4]

We likewise do not address this issue, despite its novelty, because the record reveals that the court's extradition order was in error for another reason, which we will explain more fully below. In short, as a probationer properly in California under the ICAOS, and subject to an Arizona arrest warrant issued under the ICAOS, Ramirez could not be extradited to Arizona based on probation violations occurring in California. Instead, the prosecution should have sought a "retaking" under ICAOS rules. And, because such a retaking is an extension of Ramirez's criminal case, and is in effect a probation revocation proceeding, the procedures for returning Ramirez to competency under section 1367 et seq. apply. We will therefore direct the superior court to vacate its extradition order and proceed in accordance with those procedures upon the filing of a proper complaint by the prosecution seeking Ramirez's return to Arizona under the ICAOS.

---

[4] For opinions finding such a due process right, see *In re Personal Restraint of Jian Liu* (Wash.Ct.App. 2009) 208 P.3d 1207, 1208; *State v. Patton* (Kan. 2008) 176 P.3d 151, 158; *Potter v. State* (Tex.Crim.App. 2000) 21 S.W.3d 290, 296; *Oliver v. Barrett* (Ga. 1998) 500 S.E.2d 908, 910; *In re Hinnant* (Mass. 1997) 678 N.E.2d 1314, 1318; *Pruett v. Barry* (Colo. 1985) 696 P.2d 789, 793; *Welkes ex rel. Faustino v. Brennan* (1980) 433 N.Y.S.2d 817, 818; *State ex rel. Jones v. Warmuth* (W.Va. 1980) 272 S.E.2d 446, 451; and *Kostic v. Smedley* (Alaska 1974) 522 P.2d 535, 537. Two states, Florida and Kentucky, appear to have rejected such a right. (See *State ex rel. Buster v. Purdy* (Fla.App. 1969) 219 So.2d 43; *Kellems v. Buchignani* (Ky. 1974) 518 S.W.2d 788.)

## II

California adopted the ICAOS in 2000. (§ 11180, added by Stats. 2000, ch. 658, § 1.) Arizona adopted the ICAOS in 2002. (Ariz. Rev. Stats. § 31-467, added by Laws 2002, ch. 319, § 3.) The ICAOS's purposes are "to provide the framework for the promotion of public safety and protect the rights of victims through the control and regulation of the interstate movement of offenders in the community; to provide for the effective tracking, supervision, and rehabilitation of these offenders by the sending and receiving states; and to equitably distribute the costs, benefits, and obligations of the compact among the compacting states." (§ 11180, art. I.)

The governing body of the ICAOS, the Interstate Commission for Adult Offender Supervision, has the authority to promulgate rules to achieve the purposes of the ICAOS. (§ 11180, arts. III, V, VIII.) The ICAOS rules have the force and effect of statutory law and are binding on the compacting states. (§ 11180, art. V; *Wofford v. Superior Court* (2014) 230 Cal.App.4th 1023, 1029 (*Wofford*).)

ICAOS rules describe, among other things, the offenders eligible for transfer, the procedures for transferring supervision from the sending state (which imposed supervision) to the receiving state (where future supervision will occur), the manner of supervision in the receiving state, and the procedures for retaking the offender (i.e., returning him or her to the sending state) under various circumstances. (See generally *Wofford, supra*, 230 Cal.App.4th at pp. 1030-1032.) We will provide a brief overview of the rules applicable to the proceedings at issue here.

In general, "[a] receiving state shall supervise offenders consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other supervision techniques." (ICAOS Rule 4.101.)[5] In addition to conditions of supervision imposed by the sending state, the receiving state may impose conditions if they would have been imposed on an offender sentenced in the receiving state. (Rule 4.103(a).) "The sending state shall give the same force and effect to conditions imposed by a receiving state as if those conditions had been imposed by the sending state." (Rule 4.103-1.)

The receiving state must, upon request, provide a progress report to the sending state regarding an offender's compliance with the terms of supervision. (Rule 4.106(a).) The receiving state also may provide progress reports on its own initiative. (Rule 4.106(b).)

Subject to certain exceptions, a sending state has the discretion to retake or order the return of an offender from the receiving state at any time. (Rule 5.101.) This power is known as discretionary retaking or return. The sending state may also be forced to retake the offender at the request of the receiving state under certain circumstances. (Rules 5.102, 5.103, and 5.103-1.) This is known as mandatory retaking.

---

[5]    Further rule references are to ICAOS rules unless otherwise specified.

One circumstance in which a receiving state may request mandatory retaking is when an offender engages in a pattern of behavior requiring retaking.[6] "A receiving state shall notify a sending state of an act or pattern of behavior requiring retaking within 30 calendar days of discovery or determination by submitting a violation report." (Rule 4.109(a).) The sending state must respond to the violation report and include in its response the action to be taken by the sending state. (Rule 4.109(c)(1)-(2).) The sending state may issue a warrant to retake or order the return of the offender to the sending state. (Rule 5.103(a).) Moreover, to the extent permitted by its own laws, the receiving state may take the offender into custody. (Rule 4.109-1.)

An offender subject to retaking that may result in revocation of supervision is entitled to a probable cause hearing before being returned to the sending state. (Rule 5.108(a).) The probable cause hearing is not an extradition hearing. It is a prerequisite to retaking under the ICAOS.

The purpose of the probable cause hearing is to determine whether "there is probable cause to believe that the offender has committed the alleged violations of conditions of supervision . . . ." (Rule 5.108(f).) It must occur "before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred." (Rule 5.108(a).) "The offender shall be entitled to the following rights at the probable cause hearing: [¶] (1) Written notice of the alleged violation(s); [¶] (2)

---

[6]    ICAOS rules define "behavior requiring retaking" as "an act or pattern of non-compliance with conditions of supervision that could not be successfully addressed through the use of documented corrective action or graduated responses and would result in a request for revocation of supervision in the receiving state." (Rule 1.101.)

Disclosure of non-privileged or non-confidential evidence regarding the alleged violation(s); [¶] (3) The opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation(s); [¶] (4) The opportunity to confront and cross-examine adverse witnesses, unless the hearing officer determines that a risk of harm to a witness exists." (Rule 5.108(d).) An offender cannot waive the probable cause hearing without admitting that one or more violations occurred. (Rule 5.108(b).)

After the probable cause hearing, the receiving state must provide a written report to the sending state, including information about the hearing and a summary of the testimony and evidence supporting the decision. (Rule 5.108(e).) In addition, "[a]ny evidence or record generated during a probable cause hearing shall be forwarded to the sending state." (*Ibid.*)

If the hearing officer determines there is probable cause to support the violations, the receiving state must hold the offender in custody. (Rule 5.108(f).) The sending state has 15 days to notify the receiving state of its "decision to retake [the offender] or other action to be taken [e.g. an order to return]." (*Ibid.*) If the hearing officer determines probable cause has not been shown, and the offender is not in custody, the receiving state must continue supervision. (Rule 5.108(g)(1).) If the hearing officer determines probable cause has not been shown, and the offender is in custody, the receiving state must release the offender within 24 hours of the hearing and continue supervision. (Rule 5.108(g)(3).) If the offender is in custody on the sending state's warrant, the receiving

13

state must "[n]otify the sending state to vacate the warrant, and continue supervision upon release . . . ."  (Rule 5.108(g)(2).)

III

As noted, ICAOS rules have the force and effect of statutory law and are binding on California and Arizona.  (§ 11180, art. V; *Wofford, supra*, 230 Cal.App.4th at p. 1029.)  Although the rules allow the sending state to retake or order return for any reason (Rule 5.101), one important exception to that rule covers "offender[s] subject to retaking that may result in a revocation" (Rule 5.108(a)).  If the retaking may result in revocation of supervision, a probable cause hearing is required before retaking may occur.  (*Ibid.*)

The record here shows that Ramirez is lawfully in California following transfer of his supervision from Arizona to California under the ICAOS.  Based on alleged probation violations in California, Arizona instituted proceedings to revoke his probation under the ICAOS and issued a warrant for his arrest.  California authorities arrested Ramirez and sought to send him back to Arizona.  Ramirez was therefore an "offender subject to retaking that may result in a revocation" under Rule 5.108(a), and he was entitled to a probable cause hearing conducted in accordance with ICAOS rules.

The process below fell far short of ICAOS requirements.  First, Ramirez was entitled to written notice of his alleged probation violations.  (Rule 5.108(d)(1).)  The notice Ramirez received was that Arizona had charged him with the crime of "PC 290 SEX REGISTRANT, FELONY," that Arizona had issued a warrant for his arrest on that basis, and that Ramirez was alleged to have fled Arizona after committing that crime and was now a fugitive from justice.  A notice that misstates the facts and proceedings so

14

severely is the equivalent of no notice at all. While the Arizona records alleging probation violations were eventually introduced to show Ramirez's identity, that was insufficient. Ramirez was not notified that his arrest and return to Arizona was based on the probation violations contained in the Arizona records. Instead, he was erroneously told that he was being extradited for the crime of "PC 290 SEX REGISTRANT, FELONY" that had occurred in Arizona. Second, Ramirez was entitled to disclosure of nonprivileged and nonconfidential evidence regarding the alleged violations. Ramirez was not provided any information about his alleged violations. Third, Ramirez was entitled to the opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation. Although Ramirez had the opportunity to present witnesses and evidence in the proceedings below, this opportunity was illusory without adequate notice of the alleged violations and disclosure of nonprivileged and nonconfidential evidence regarding them.[7]

The Imperial County District Attorney argues that the ICAOS is not the exclusive procedure for returning Ramirez to Arizona and California authorities may still pursue extradition under section 1551 when an ICAOS offender violates conditions of probation or parole. We disagree. Even assuming extradition were an available alternative,

---

[7] The remaining due process requirements identified in the rules appear to have been satisfied, since the hearing occurred "before a neutral and detached hearing officer" and appears to have been "in or reasonably near the place where the alleged violation occurred." (Rule 5.108(a).) Ramirez was also provided the opportunity "to confront and cross-examine adverse witnesses" (Rule 5.108(d)(4)), but as noted this opportunity was somewhat meaningless if the prosecution was not required to disclose adverse witnesses regarding the alleged violations at issue.

Arizona did not request Ramirez's extradition. It requested his return under the ICAOS. The Arizona court order and arrest warrant were prominently marked with the notation "INTERSTATE COMPACT PROBATION VIOLATION." In a "NOTE TO COURT" that was part of the court's order, the Arizona probation officer noted that Ramirez was subject to an "INTERSTATE COMPACT WARRANT" and identified an ICAOS rule (Rule 5.111) prohibiting bail during the ICAOS retaking process. Although the warrant form also referenced extradition in standard notations, the documents read as a whole make clear that Arizona sought Ramirez's return under the ICAOS; it did not seek his extradition. The ICAOS rules impose certain requirements on California in this situation, including the probable cause hearing described above, and those requirements have the force of statutory law. California authorities could not treat Arizona's request under the ICAOS as a request for Ramirez's extradition and thereby avoid these requirements.

Because Arizona invoked the ICAOS, we need not consider whether the ICAOS rules would still apply had Arizona requested Ramirez's *extradition* under the same circumstances. Nor need we consider whether extradition would be available under those circumstances under section 1551 or otherwise, or whether Ramirez's extradition waiver would affect such proceedings. The waiver does not affect the proceedings under the ICAOS.

For the foregoing reasons, we conclude California was required to follow ICAOS rules in effecting Ramirez's return to Arizona, including the requirement of a probable cause hearing under Rule 5.108. While not every deviation from the ICAOS rules will require reversal, the wholesale departure from the requirements for a probable cause

16

hearing here deprived Ramirez of essential elements of due process and resulted in a fundamentally unfair proceeding.  The superior court's extradition order must be vacated. (See *Gagnon v. Scarpelli* (1973) 411 U.S. 778; *Morrissey v. Brewer* (1972) 408 U.S. 471.)  On remand, the superior court should allow the prosecution to institute the proper proceedings under the ICAOS to maintain Ramirez in custody.

IV

We turn next to the question of Ramirez's competence, which originally animated these proceedings.  As noted, we need not decide whether an alleged fugitive in extradition proceedings has a statutory or constitutional right to competence.  Instead, the issue presented here is whether an offender under ICAOS supervision has a statutory or constitutional right to competence at a probable cause hearing under Rule 5.108.  The ICAOS rules themselves do not address competence, and we have found no authority directly addressing whether such a right exists here.  For reasons we will explain, however, we conclude California's criminal competency statutes apply.  (See § 1367 et seq.)  We therefore need not reach any constitutional issues, based on due process or otherwise.

This issue presents a question of statutory interpretation, which we consider de novo.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)  "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme.  [Citation.]  Essential is whether our interpretation, as well as the consequences flowing therefrom, advances the Legislature's intended purpose."  (*People v. Hubbard* (2016) 63 Cal.4th 378, 386.)

17

By their terms, California's criminal competency statutes apply to proceedings to revoke probation or other supervision. Indeed, the general statement of purpose behind the statutes expressly includes such proceedings: "A person cannot be tried or adjudged to punishment or have his or her probation, mandatory supervision, postrelease community supervision, or parole revoked while that person is mentally incompetent." (§ 1367, subd. (a).) The statute providing the court with authority to inquire into a defendant's mental competence likewise includes revocation proceedings (§ 1368, subd. (a)), as do the statutes empowering the court to restore an incompetent defendant to competence (§§ 1367, subd. (b), 1370, 1370.01, 1370.02). Thus, if Ramirez were under supervision based on a judgment or order of a California court, and had not been transferred under the ICAOS, the competency statutes would apply.

Under the ICAOS, the first step in proceedings to revoke supervision for an ICAOS offender is the probable cause hearing in the receiving state. (Rule 5.108.) Indeed, if the hearing officer determines that no probable cause exists to support the alleged violations, the sending state may not retake the offender and revoke supervision. (Rule 5.108(g).) Instead, supervision must continue in the receiving state. (*Ibid.*) While the hearing officer cannot revoke supervision at the probable cause hearing, a finding of probable cause is a prerequisite to such revocation.

The probable cause hearing therefore constitutes part of the revocation proceedings under California's criminal competency statutes. In such a hearing, the ICAOS offender is "alleged to have violated the terms of probation for a felony or mandatory supervision" or "charged with . . . a violation of formal or informal probation

18

for a misdemeanor" or is "alleged to have violated the terms of his or her postrelease community supervision or parole," as used in the competency statutes. (See § 1367, subd. (b); see also § 1368, subd. (a) [competency statutes apply "during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision, or parole"].)

Our conclusion is supported by the purpose behind California's competency statutes. "[T]he sole purpose of these statutes is the humanitarian desire to assure that one who is mentally unable to defend himself not be tried upon a criminal charge." (*Tarantino v. Superior Court* (1975) 48 Cal.App.3d 465, 469; see *People v. Jernigan* (2003) 110 Cal.App.4th 131, 136 ["The sole purpose of competency proceedings is to protect the accused."].) Applying the competency statutes to ICAOS probable cause hearings furthers this protective goal. An ICAOS offender who is incompetent cannot understand the alleged violations, defend himself, or assist his counsel adequately. Just as an offender must be competent to participate in California revocation proceedings, so too must an offender be competent to participate in an ICAOS probable cause hearing.

The superior court here found Ramirez incompetent under the standard set forth in California's criminal competency statutes. On remand, it should proceed in accordance with those statutes.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its June 28, 2017, extradition order and conduct further proceedings consistent with this opinion. The stay

19

issued July 20, 2017, is vacated.  This opinion will be final as to this court 10 days from its filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)


                                                                    HALLER, Acting P. J.

WE CONCUR:


              O'ROURKE, J.



              AARON, J.